**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| INFOGATION CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    C.A. No. 2:23-cv-00358-JRG |
| | ) |
| BAYERISCHE MOTOREN WERKE AG, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT BAYERISCHE MOTOREN WERKE AG'S**
**MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2), 12(b)(5), AND 12(b)(6)**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL BACKGROUND.....................................................................................1

        A.      Infogation's Insufficient Service of Process ............................................ 1

        B.      Infogation's Count 1:  The '628 Patent ................................................... 2

                1.      The Claimed Abstract Idea of Using Artistic Maps for Navigation .......... 2

                2.      The Deficient Infringement Allegations Under Count 1 ........................... 5

        C.      Infogation's Counts 2 and 3:  The '994 and '003 Patents....................... 5

                1.      The Claimed Abstract Idea of 3D-Mapped Navigation............................. 5

                2.      The Deficient Infringement Allegations Under Counts 2 and 3 ............... 7

        D.      Infogation's Count 4:  The '743 Patent .................................................. 8

                1.      The Claimed Abstract Idea of Optimal Route Navigation......................... 8

                2.      The Deficient Infringement Allegations Under Count 4 ........................ 10

III.    STATEMENT OF THE ISSUES PRESENTED.................................................10

IV.     LEGAL STANDARDS ...........................................................................................11

        A.      Insufficient Service of Process and Lack of Personal Jurisdiction ...................... 11

        B.      Failure to State A Claim Upon Which Relief Can Be Granted ........................... 11

V.      THE COURT SHOULD GRANT DISMISSAL BECAUSE INFOGATION FAILED TO
        EFFECT SERVICE OF PROCESS......................................................................12

        A.      Infogation Has Failed to Effect Service Under the Hague Convention................ 12

        B.      Infogation's Service Attempt Through BMW NA Is Also Improper .................. 15

VI.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THE
        ASSERTED PATENTS ARE DIRECTED TO PATENT-INELIGIBLE ABSTRACT
        IDEAS UNDER 35 U.S.C. § 101...........................................................................17

        A.      The '628 Patent Is Directed to the Patent-Ineligible Abstract Idea of Using
                Artistic Maps for Navigation ................................................................... 19

        B.      The '994 and '003 Patents Are Directed to the Patent-Ineligible Abstract
                Idea of 3D-Mapped Navigation ............................................................... 22

        C.      The '743 Patents Is Directed to the Patent-Ineligible Abstract Idea of
                Optimal Route Navigation ....................................................................... 25

VII.    THE COURT SHOULD ALSO DISMISS THE COMPLAINT BECAUSE IT FAILS TO
        PLEAD A PLAUSIBLE CLAIM OF INFRINGEMENT..................................28

        A.      Infogation Fails to Plead Plausible Direct Infringement of the '628 Patent......... 28

        B.      Infogation Fails to Plead Plausible Direct Infringement of the '994 Patent......... 29

C.    Infogation Fails to Plead Plausible Direct Infringement of the '003 Patent ......... 29

D.    Infogation Fails to Plead Plausible Direct Infringement of the '743 Patent ......... 30

E.    Infogation Fails to Plead Plausible Indirect Infringement .................................... 30

VIII.    CONCLUSION ............................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACQIS Ltd. Liab. Co. v. Lenovo Grp. Ltd.*,
    572 F. Supp. 3d 291 (W.D. Tex. 2021) ....................................................................... 13

*Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*,
    450 Fed. App'x 326 (5th Cir. 2011) ......................................................................... 16

*Alice Corp. Pty. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ................................................................................... *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 11

*Barbaro Techs., LLC v. Niantic, Inc.*,
    475 F. Supp. 3d 1007 (N.D. Cal. 2020) ....................................................................... 24

*Bayoil Supply & Trading of Bahamas v. Jorgen Jahre Shipping AS*,
    54 F. Supp. 2d 691 (S.D. Tex. 1999) ........................................................................... 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................... 11

*Blue Spike, LLC v. ASUS Computer Int'l, Inc.*,
    No. 6:16-CV-1384-RWS-KNM, 2018 WL 3301705 (E.D. Tex. Feb. 20, 2018) ........ 15, 16, 17

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) ................................................................................. 28, 29

*Brewer v. Suzuki Motor of Am., Inc.*,
    No. 4:15-CV-197, 2015 WL 4433046 (S.D. Tex. July 17, 2015) ............................. 13

*Camreta v. Greene*,
    563 U.S. 692 (2011) ...................................................................................................... 27

*Carimi v. Royal Carribean Cruise Line, Inc.*,
    959 F.2d 1344 (5th Cir. 1992) ..................................................................................... 11

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ..................................................................................... 18

*Compass Bank v. Katz*,
    287 F.R.D. 392 (S.D. Tex. 2012) ................................................................................. 14

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
   758 F.3d 1344 (Fed. Cir. 2014)..................................................................22

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)............................................................24, 26

*Freedom Pats. LLC v. TCL Elecs. Holding Ltd.*,
   No. 4:23-CV-00420, 2023 WL 7414144 (E.D. Tex. Nov. 9, 2023).......................13

*Groundswell Techs., Inc. v. Synapsense Corp.*,
   No. CV1506024ABJPRX, 2016 WL 6661177 (C.D. Cal. Apr. 28, 2016)............................21

*Hyman v. VOV GmbH*,
   No. 1:19-CV-00206, 2020 WL 1303971 (W.D. La. Feb. 28, 2020)......................14

*InfoGation Corp. v. ZTE Corp.*,
   No. 16-CV-01901-H-JLB, 2017 WL 1135638 (S.D. Cal. Mar. 27, 2017)............................27

*InfoGation Corp. v. ZTE Corp.*,
   No. 16-CV-01901-H-JLB, 2017 WL 1821402 (S.D. Cal. May 5, 2017)
   ................................................................................9, 10, 25, 26

*Inhale, Inc v. Gravitron, LLC*,
   No. 1-18-cv-762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018)....................30

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
   50 F.4th 1371 (Fed. Cir. 2022) ...........................................................21, 24

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017)............................................................24, 26

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015)..................................................................18

*J.O. Alvarez, Inc. v. Rainbow Textiles, Inc.*,
   168 F.R.D. 201 (S.D. Tex. 1996).................................................................17

*Jewel Pathway LLC v. Polar Electro Inc.*,
   556 F. Supp. 3d 335 (S.D.N.Y. 2021)..............................................................21

*LifeNet Health v. LifeCell Corp.*,
   837 F.3d 1316 (Fed. Cir. 2016)..................................................................29

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
   869 F.3d 1372 (Fed. Cir. 2017)..................................................................30

*Lisson v. ING GROEP N.V.*,
   262 F. App'x 567 (5th Cir. 2007) ........................................................15, 16

*Lyda v. CBS Corp.*,
    838 F.3d 1331 (Fed. Cir. 2016)..................................................................................30

*Man Ferrostaal Inc. v. M/V Vindonissa*,
    No. CV H-07-02983, 2009 WL 10714623 (S.D. Tex. Jan. 23, 2009)....................................14

*Michigan Motor Techs., LLC v. Bayerische Motoren Werke AG*,
    No. 22-CV-3804, 2023 WL 4683428 (N.D. Ill. July 21, 2023)..............................................17

*Move, Inc. v. Real Estate All. Ltd.*,
    221 F. Supp. 3d 1149 (C.D. Cal. 2016) ...................................................................9, 22, 26

*Murphy Bros. v. Michetti Pipe Stringing, Inc.*,
    526 U.S. 344 (1999)................................................................................................11

*NantWorks, LLC v. Niantic, Inc.*,
    No. 20-CV-06262-LB, 2023 WL 187490 (N.D. Cal. Jan. 13, 2023), *motion to
    certify appeal denied*, 2023 WL 2633211 (N.D. Cal. Mar. 24, 2023)....................................24

*Opticurrent, LLC v. Power Integrations, Inc.*,
    No. 2:16-cv-325-JRG, 2016 WL 9275395 (E.D. Tex. Oct. 19, 2016) ....................................29

*Paradigm Ent., Inc. v. Video Sys. Co.*,
    No. CIV. A. 3:99-CV2004P, 2000 WL 251731 (N.D. Tex. Mar. 3, 2000) ............................15

*Peschke Map Techs. LLC v. Rouse Props. Inc.*,
    168 F. Supp. 3d 881 (E.D. Va. 2016) ....................................................................24

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
    No. CV 17-1692-CFC-SRF, 2018 WL 6521978 (D. Del. Dec. 12, 2018) ............................27

*Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*,
    No. 2021-1906, 2022 WL 794981 (Fed. Cir. Mar. 15, 2022)................................................27

*Sang Young Kim v. Frank Mohn A/S*,
    909 F. Supp. 474 (S.D. Tex. 1995) .......................................................................13

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)..............................................................................11

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016)..............................................................................18

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)............................................................................21, 24

*In re TLI Commc'ns LLC Patent Litig.*,
    87 F. Supp. 3d 773 (E.D. Va. 2015) .............................................................22, 25, 28

*UNM Rainforest Innovations v. D-Link Corp.*,
    No. 6-20-CV-00143-ADA, 2020 WL 3965015 (W.D. Tex. July 13, 2020)............................17

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
    793 F.3d 1306 (Fed. Cir. 2015).........................................................................19, 21, 24, 26

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988)..............................................................................................................13

*U.S. ex rel. Wilkins v. N. Am. Const. Corp.*,
    173 F. Supp. 2d 601 (S.D. Tex. 2001) ................................................................................15

**Statutes**

35 U.S.C. § 101............................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 4(f)(1) .................................................................................................12, 13

Fed. R. Civ. P. 4(h)(2)..........................................................................................................11

Fed. R. Civ. P. 8(a)(2)..........................................................................................................11

Fed. R. Civ. P. 12(b)(2)..............................................................................................1, 10, 12

Fed. R. Civ. P. 12(b)(5)........................................................................................1, 10, 12, 17

Fed. R. Civ. P. 12(b)(6)................................................................................................. *passim*

## I.    INTRODUCTION

Defendant Bayerische Motoren Werke AG ("BMW AG") respectfully moves the Court to dismiss Plaintiff Infogation Corporation's ("Infogation") Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process—and thus also for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2)—and pursuant to Fed. R. Civ. P. 12(b)(6) because the four Asserted Patents are directed to patent-ineligible abstract ideas under 35 U.S.C. § 101 and Infogation has failed to plead a plausible claim of infringement.

## II.    FACTUAL BACKGROUND

### A.    Infogation's Insufficient Service of Process

Infogation acknowledges that BMW AG is a German corporation with its principal place of business in Munich, Germany.  Compl. ¶ 2.  The original summons issued on October 27, 2023, and correctly identified the service address as BMW AG's headquarters in Germany.  ECF No. 3 at 1.  Infogation even requested that the Texas Secretary of State effect service on BMW AG in Germany.  Ex. A at 2.  The Texas Secretary of State's department for service of process forwarded the materials to BMW AG by registered mail on November 20, 2023.  *Id.* at 1.[1]

Notwithstanding its foreign service request, Infogation sought a second summons 100 days after the Complaint was filed.  ECF No. 4.  The belated, second summons incorrectly seeks service on BMW AG ***through a Texas service agent for BMW of North America, LLC*** ("BMW NA").  *Id.* at 1.  BMW NA is not a party to this litigation.  Neither BMW NA nor its Texas service agent CT Corporation System ("CT Corporation") is authorized to accept service on behalf of BMW AG.  Göbel Decl. ¶¶ 7-10.  CT Corporation indeed rejected the service attempt.  Ex. B.

---

[1] BMW AG does not accept such service.  *See* Declaration of Dr. Bernhard Göbel ("Göbel Decl.") ¶ 5.  Germany is a signatory to the Hague Convention (Ex. C), and has objected to alternative service such as through "postal channels" (Ex. D).  Service by mail is thus improper under the Hague Convention.

BMW AG is an independent legal entity with its own management team, operations, policies, and procedures that are separate and distinct from BMW NA. *Id.* ¶¶ 10-18. BMW AG does not directly own any BMW NA stock or any other interest in BMW NA. *Id.* ¶ 10. Indeed, BMW AG is separated from BMW NA by four intermediary entities. *Id.* ¶ 11. There is no overlap in management between the two entities. *Id.* ¶¶ 13-18. BMW AG does not maintain books and records for BMW NA, nor does it file BMW NA's tax returns. *Id.* ¶ 17. The corporate relationship is indirect and the two entities operate independently. *Id.* ¶¶ 10-18. BMW AG manufactures and sells vehicles to BMW NA, which controls its own operations and distributions in the United States as a self-sustaining company. *Id.* ¶ 15.

**B.    Infogation's Count 1: The '628 Patent**

Infogation alleges purported infringement of method claim 1 in U.S. Patent No. 10,107,628 ("'628 patent"). Compl. ¶¶ 25-40. Independent claim 11 is styled as an apparatus claim that adds conventional structures and execution of computer code to perform the method steps.

**1.    The Claimed Abstract Idea of Using Artistic Maps for Navigation**

As the title of the '628 patent reveals, the claimed subject matter is directed to using artistic maps for navigating areas. The '628 patent defines an "artistic map" as showing objects or points of interest in an exaggerated manner—*i.e.*, a non-linearly scaled map. Ex. E at Abstract ("The artistic map is often non-linear scaled, which means the map includes various objects being exaggeratedly shown."). The purported objective of the claimed subject matter is to avoid a "boring" map and "to make the navigation [] a pleasant experience." *Id.* at 1:41-42, 65-67.

Using an artistic map for navigation is an age-old concept that dates back to the earliest voyages and explorations. *See*, *e.g.*, Ex. F at 6 ("[M]aps are abstractions of the world that … have been used for centuries to visualize spatial data and to communicate information."). Throughout the history of cartography, maps were drawn at different scales and points of interest or landmarks

appeared exaggerated. *Id.* at 22 ("Landmarks usually enjoy a prominent spatial location. … They may vary widely in scale …."); *id.* at 24 ("[P]ictorial symbols can still be highly effective when portrayed out of scale and larger than the rest of the cartographic representation on the map.").

The '628 patent acknowledges that artistic maps have been commonly used for navigation. Figure 1 of the '628 patent shows an example of such an artistic map used for zoos in the prior art. The '628 patent discloses that "[t]he map 100 is artistic and non-linearly scaled, where points of interests are exaggeratedly displayed to assist a visitor to locate what is desired to be seen." Ex. E at 4:3-6. The '628 patent further acknowledges that "[s]uch a map may be provided *electronically* by the zoo." *Id.* at 4:6-7 (emphasis added).

The '628 patent appends this age-old method of using artistic maps for navigation to conventional GPS "software, hardware, or in a combination of both." *Id.* at 5:62-64. In particular, the method is implemented by a conventional network and portable computing device equipped with navigation capabilities. *Id.* at 8:24-57. An artistic map is first downloaded from the network into the portable computing device. *Id.* at 8:26-27. The map is downloaded as a well-known GPS data file such as the "GPs eXchange file format (.gpx) and Garmin Point of Interest file format (.gpi)." *Id.* at 4:7-12. Further, the portable computing device is configured to perform as a GPS receiver. *Id.* at 4:10-12. Such GPS receivers were "widely used" at the time of the '628 patent. *Id.* at 1:29-39.[2] Various objects are exaggeratedly shown on the device display. *Id.* at 8:27-29, 8:36-37. Each object is "represented by a plurality of points on the display." *Id.* The '628 patent, however, explains that "[e]ach of the objects … is *inherently* represented" by points on the display. *Id.* at 5:25-27 (emphasis added). In other words, this is an inherent feature.

---

[2] Independent claim 11 only adds more structures such as a generic display screen, a memory for storing computer code, and a processor for executing the computer code. *Id.* at 9:30-10:7. These were also conventional structures and widely used in GPS receivers at the time. *Id.* at 5:3-12; 7:27.

The remainder of the independent claims recites steps directed to data input, processing, conversion, and output for providing navigational directions.  *Id.* at 8:39-57.  In particular, the claims require first receiving a user's selection of an object and converting the corresponding data to coordinates in an underlying geographical map that is not displayed.  *Id.* at 8:39-42.  This means "the pair of coordinates in the map is translated into a pair of latitude and longitude in an actual geographic map."  *Id.* at 6:19-20.  The translation is performed by "an application module"— *i.e.*, software code executed by a processor.  *Id.* at 5:15-21.

During prosecution of the '628 patent, applicants characterized these claimed steps as "data manipulation operations."  Ex. G at 8-10; *see also* Ex. E at 3:41-45 (disclosing "operations of data processing devices"); *id*. at 2:33-35 (translating coordinates is based on processing "GPS data"); *id.* at 4:19-21.  Notably, the '628 patent does not disclose many details regarding the data translation or conversion because they are "well known" methods and procedures performed with conventional components.  Ex. E at 3:50-55.  The '628 patent does, however, disclose that the translation is "obtained by interpolating the pixel coordinates" of an object in the artistic map.  *Id.* at 7:7-14.  Interpolation is a well-known mathematical process that is applied here between pixel coordinates and Cartesian coordinates in a geographic map.  *Id.* at 4:57-63.

Similarly, using both an artistic map for visual purposes and an underlying geographic map for route calculations was also well known long before the '628 patent.  *See*, *e.g.*, Ex. H at 166 ("A second layer then places 3D landmark representations on top of the map, and the third layer consists of additional meta-graphical elements ….").  Indeed, combining the use of an artistic map with real-world geographic data has been human activity for as long as maps have existed.  Individuals have long used artistic maps for landmarks while determining the navigational path from geographic data in the real world.  This is referred to as cognitive mapping.  Ex. F at 15.

### 2.    The Deficient Infringement Allegations Under Count 1

The Complaint relies on two images that make the infringement allegations implausible. Compl. ¶ 29.  First, claim 1 of the '628 patent requires that a "computing device is *portable*, equipped with navigation capabilities."  *Id.* at 8:32-33 (emphasis added).  As shown in the Complaint itself, the accused navigation system is a fixed feature within an accused vehicle—*not* a portable device.  Second, claim 1 requires "showing the navigational direction on the artistic map being displayed," while "the geographical map *is not being displayed on the display*."  Ex. E at 8:37-38, 56-57 (emphasis added).  The Complaint, however, shows that the alleged artistic map is displayed alongside the purported geographic map.  Compl. ¶ 29 ("screenshot showing … artistic map and geographic map").  Third, Infogation does not plead any facts to show a single instance of BMW AG allegedly performing the method of claim 1 in the United States.  *Id.* (showing a map of Munich, Germany).

### C.    Infogation's Counts 2 and 3:  The '994 and '003 Patents

Infogation alleges purported infringement of method claim 1 in U.S. Patent No. 8,406,994 ("'994 patent") and U.S. Patent No. 8,898,003 ("'003 patent").[3]  Compl. ¶¶ 41-72.  The other independent claims are styled as apparatus claims that add conventional structures and execution of computer code to perform the method steps.

### 1.    The Claimed Abstract Idea of 3D-Mapped Navigation

Both patents are directed to superimposing images of objects on a map to simulate or resemble the user's 3D environment for navigation—*i.e.*, 3D-mapped navigation.  *See*, *e.g.*, Ex. I at Abstract ("A navigation device presents a digital map resembling an ambient environment with a certain level of realism, where various objects resembling major structures or signs are presented

---

[3] The patents are related and share substantially the same specification.  All common disclosures referenced herein cite to the '994 patent.

or superimposed in the map."); *id.* at 1:16-18; *id.* at 2:10-15 ("The structures or settings may include landmarks, signs, significant buildings, exit designs or other impressions resembling the vicinity of the GPS receiver."). The purported objective is to provide an aesthetic view because a 2D map "is considered *boring*." *Id.* at 1:38-41 (emphasis added).

The key limitation of superimposing objects (*e.g.*, landmarks, signs, buildings) onto the map to create a 3D impression during navigation was added during prosecution of the '994 patent. Ex. K at 7-9. Applicants stressed that the focal point of the claimed invention is "a mechanism to present a GPS map resembling (not real but similar) the surrounding of a location being approached …." *Id.* The Examiner subsequently allowed the application. This allowance predated the Supreme Court's seminal *Alice* decision (2014) by more than a year.

The claimed concept of 3D-mapped navigation was known and conventional long before the filing date of the patents. *See*, *e.g.*, Ex. H at 162 ("It displays the 3D-map information …."); Ex. L at 180 (disclosing "3D depiction of the street in AR navigation"); Ex. M ¶ [0006] ("Varieties of navigation systems have been developed that provide three-dimensional perspective views which, in principle, are more easily understood by many drivers."); Ex. N at ¶ [0005] ("[T]he map is preferably designed with, for example, a three-dimensional display technique so that users can perceive reality."). The claims append the concept of 3D-mapped navigation to conventional components of a GPS receiver with a display, memory, and processor for executing computer code. Ex. I at 3:35-50. Moreover, the processes are implemented in software. *Id.* at 4:54-56. Generating a 3D map "is implemented in an application module that is executed by a micro-controller in a GPS." *Id.* at 5:56-58; *see also id.* at 4:63-5:15 ("[T]he GPS searches and locates the map object attribute table … for map objects in the vicinity of the GPS location. … [T]he GPS generates an electronic map including every map object to be displayed …").

In other words, the claimed method is based on searching data in a table, processing it, and applying it in software to display results. *Id.* at 3:47-50 ("[A]n application module is configured to generate an electronic map from data received from a service provider or stored locally."); *id.* at 3:59-62 ("The data may be supplied to the application module that is configured to process the map object attribute table ...."). Changing any object attributes, such as colors or effects, is also performed by conventional software applications. *Id.* at 4:22-25; *see also id.* at 5:18-22 (adding rain effect based on sensor data); 6:4-37 (disclosing "simple color-changing effects").

### 2.     The Deficient Infringement Allegations Under Counts 2 and 3

As with Count 1, Infogation relies on two snapshots from alleged YouTube videos that do not support the infringement allegations. First, independent claim 1 of the '994 patent requires "superimposing images representing objects onto the map, wherein the *objects resembles* [sic] *structures or settings along the route*, the images are superimposed along the route to create a 3D impression around the location." Ex. I at 7:34-37 (emphasis added). Claim 1 further requires "changing the [superimposed] images [representing these objects along a route] with different color effects in reference to ... detecting weather conditions around the location [of the GPS receiver] at a specific time of a day that the map is to be displayed on the GPS receiver." *Id.* at 7:42-46. In other words, claim 1 requires changing the superimposed objects (*e.g.*, landmarks, signs, significant buildings, and exit designs) in accordance with the weather conditions around the GPS receiver. The Complaint merely shows a map with weather icons showing a weather forecast for different regions. Compl. ¶ 61.[4] These weather icons are not objects resembling structures or settings along the route, superimposed to create a 3D impression.

---

[4] The cited YouTube video does not show the image included in the Complaint. Moreover, the cited YouTube video shows augmented reality based on the actual environment and structures— *not* superimposed objects that *resemble* the area as required by claim 1. *See* https://youtu.be/xKo-fmToUu4 at 1:43-58.

Second, claim 1 of the '994 patent requires that "the map is shown to include a raining effect when raining happens." Ex. I at 7:51-52. The specification provides that a "*raining* or evening sky may be displayed together with the mountain" in a 3D perspective of the route. *Id.* at 5:25-35 (emphasis added). The image in the Complaint does not show such a raining effect.

Third, claim 1 of the '003 patent requires that "an icon of a vehicle in the map shows that headlights are on when the vehicle is supposed to turn on its headlights." Ex. J at 7:50-52. The specification explains that "*instead of showing an arrow* representing a vehicle going along a road, a car icon is used." *Id.* at 7:10-11 (emphasis added). The Complaint, however, shows the opposite—an arrow representing the vehicle is used instead of a car icon. Compl. ¶ 45.

### D.    Infogation's Count 4:  The '743 Patent

Infogation alleges purported infringement of system claim 15 in U.S. Patent No. 6,292,743 ("'743 patent"). Compl. ¶¶ 73-88. The other independent claims recite a method. The '743 patent issued more than a decade before the Supreme Court's seminal *Alice* decision (2014). Ex. O ("Date of Patent:  Sep. 18, 2001). It ***expired more than five years ago***.

### 1.    The Claimed Abstract Idea of Optimal Route Navigation

The '743 patent is directed to providing optimal route navigation based on real-time data. Ex. O at 1:5-9. Such real-time data includes "traffic, weather and road conditions and the like for determining optimal routes." *Id.* at 1:37-41. The '743 patent acknowledges that the use of real-time data for navigation was already well-known. *Id.* at 1:46-61 (identifying "Toyota's MONET navigation system" and "other similar current systems [that] provide information and/or services to users in real-time" such as "real-time traffic data, road restrictions"). The real-time data is used to calculate an optimal route based on well-known algorithms. *Id.* at Abstract ("The server calculates an optimal route based on real-time data available on the network."); *see id.* at 2:22-24 (noting the use of "sophisticated algorithms for calculating optimal routes" in the prior art).

According to the '743 patent, the optimal route is then formatted such that "[a] *generic natural language description* is used to specify the optimal route [and] downloaded to the client." *Id.* at Abstract (emphasis added). The natural language description provides route instructions in simple "terms [that are] self-explanatory." *Id.* at 9:19-27. In other words, the route data is transmitted to the navigation system in human language. *See*, *e.g.*, *id.* at Fig. 5; *see also InfoGation Corp. v. ZTE Corp.*, No. 16-CV-01901-H-JLB, 2017 WL 1821402, at *9 (S.D. Cal. May 5, 2017) (construing "natural language" as "a language spoken or written by humans, as opposed to programming language or machine language"). The language is "non-proprietary" in that it is "independent from the local mapping database software used on the clients, and can therefore be used in conjunction with any type of mapping database software." Ex. O at 3:23-26.[5]

Providing route instructions in natural language is a human activity as old as navigation. Indeed, navigators on ships have historically planned optimal routes based on a variety of factors. The so-called mission plan is relayed by a navigator to the team with a step-by-step description of the voyage. The official language of navigators is referred to as "seaspeak." It is a controlled *natural language* spoken by *all* navigation teams around the world. Exs. P and Q. Navigators also perform the same function in other settings such as during road trips. In the motorsport "rallying," the driving team consists of a driver and co-driver. Notably, the co-driver is called a "navigator" and provides optimal navigation guidance based on the route and conditions.

The '743 patent appends this concept to conventional structures and processes. *See*, *e.g.*, Ex. O at 5:66-6:2 ("An example of a general-purpose computer system that can be used … is a Clarion Auto PC."); *id.* at 5:39-41 ("[A]ny type of wireless technology can be used."); *id.* at 6:40-42 ("[T]he local mapping database can be any type of mapping database."). A general-purpose

---

[5] Notably, the term "non-proprietary" does not appear in the specification of the '743 patent.

navigation system receives the route data, uses algorithms to processes it, searches a local mapping database, and displays the route data.  *Id.* at 8:54-59; *id.* at 9:40-42 ("[T]his information is processed by the navigation computer 204 to reconstruct and display the route 508 using the local mapping database 208."); *id.* at 11:6-8 ("The outcome of this algorithm depicted by flowchart 600 is a link list of shape points, which define the optimal route downloaded from the server 114.").

### 2.    The Deficient Infringement Allegations Under Count 4

As with the other counts, Infogation again relies on two images that do not support its infringement allegations.  Compl. ¶ 77.  First, system claim 15 of the '743 patent requires a "*navigation server* for calculating optimal routes based on real-time information, said optimal routes being formatted using a non-proprietary, natural language description."  Ex. O at 17:13-16 (emphasis added).  The Complaint only alleges that BMW AG provides a navigation computer with a wireless transceiver that can connect to a navigation server.  Compl. ¶ 77.  Infogation does not plead that BMW AG provides a navigation server.  *Id.*  Second, the Complaint allege no facts that an optimal route is formatted by a navigation server in "non-proprietary, natural language" and provided to the accused navigation system.

## III.    STATEMENT OF THE ISSUES PRESENTED

Whether the Court should dismiss with prejudice Infogation's Complaint for: (a) insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5), and thus also for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2); and (b) for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) because the Asserted Patents are directed to patent-ineligible abstract ideas under 35 U.S.C. § 101 and governing case law, and because Infogation has failed to plead a plausible claim for patent infringement under the Supreme Court's governing plausibility standard.

## IV.    LEGAL STANDARDS

### A.    Insufficient Service of Process and Lack of Personal Jurisdiction

Valid service of process is required before a defendant is subject to the jurisdiction of a federal court. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). When a defendant is not properly served, the action should be dismissed for insufficient service of process and for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2) and 12(b)(5). "[O]nce the validity of service of process has been contested, the plaintiff bears the burden of establishing its validity." *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). Service on a foreign corporation is governed by Rule 4(f). *See* Fed. R. Civ. P. 4(h)(2).

### B.    Failure to State A Claim Upon Which Relief Can Be Granted

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court thus has held that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "facial plausibility" standard requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678. A court must dismiss when factual allegations "have not nudged their claims across the line from conceivable to plausible." *Id.* at 547.

The issue of whether a patent is directed to patent-ineligible subject matter under 35 U.S.C. § 101 "is a question of law, based on underlying facts." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). "Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) [motion] …." *Id*. (emphasis added).

## V.    THE COURT SHOULD GRANT DISMISSAL BECAUSE INFOGATION FAILED TO EFFECT SERVICE OF PROCESS

The Court should dismiss Infogation's Complaint for insufficient service of process under Fed. R. Civ. P. 12(b)(5), and thus also for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Infogation has not effected valid service of process on BMW AG for at least two reasons.

***First***, BMW AG is a German company that has no authorized agent to accept service in the State of Texas.  Göbel Decl. ¶¶ 2, 9.  As a foreign company, it must be served in accordance with the requirements of the Hague Convention.  Fed. R. Civ. P. 4(f)(1).  Infogation has triggered application of the Hague Convention by asking the Texas Secretary of State to serve BMW AG in Germany by mail.  Ex. A.  However, a German company cannot be served directly by mail under the Hague Convention.  Service must be made through the designated central authority.  Infogation has failed to do so.

***Second***, Infogation's attempt to effect indirect service through BMW NA is also improper.  Neither BMW NA nor its agent CT Corporation is authorized to accept service for BMW AG.  Göbel Decl. ¶¶ 7-10.  Indeed, CT Corporation rejected Infogation's service attempt.  Ex. B.  Further, BMW NA is not an alter ego of BMW AG such that indirect service would be proper.  The two companies operate as separate, distinct, and independent entities.  Göbel Decl. ¶¶ 10-18.  Dismissal is thus warranted on this record.

### A.    Infogation Has Failed to Effect Service Under the Hague Convention

BMW AG is the only defendant in this case.  Compl. ¶ 2.  The Complaint correctly alleges that BMW AG is a German company with its principal place of business in Munich, Germany.  *Id*.  Indeed, BMW AG does not have offices in the State of Texas or elsewhere in the United States.  Göbel Decl. ¶ 9.  It should thus come as no surprise that even Infogation's original summons identified BMW AG's headquarters in Munich as the proper service address.  ECF No. 3.

As a foreign company, BMW AG must be served abroad.  *See* Fed. R. Civ. P. 4(f)(1). Germany and the United States are both signatories to the Hague Convention.  The Supreme Court has long held that "compliance with the [Hague] Convention is mandatory in all cases" requiring the transmittal of documents abroad "as a necessary part of service."  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705-707 (1988).  Such is the case here.

Courts in this Circuit have repeatedly confirmed that the Texas long-arm statute requires transmittal of documents abroad to serve a foreign corporation.  *Bayoil Supply & Trading of Bahamas v. Jorgen Jahre Shipping AS*, 54 F. Supp. 2d 691, 693 (S.D. Tex. 1999).  Accordingly, "service of process on foreign defendants under § 17.043 triggers the requirements of the Hague Convention."  *Brewer v. Suzuki Motor of Am., Inc.*, No. 4:15-CV-197, 2015 WL 4433046, at *1 (S.D. Tex. July 17, 2015).  Because BMW AG "is a foreign resident, notice must be mailed abroad, triggering the requirements of the Hague Convention."  *Bayoil Supply*, 54 F. Supp. at 693; *Sang Young Kim v. Frank Mohn A/S*, 909 F. Supp. 474, 479 (S.D. Tex. 1995) ("Because the Defendant in this case could be properly served under Texas law only by transmitting judicial documents to the Defendant abroad, the Hague Convention is applicable.").

Even Infogation originally requested that the Texas Secretary of State effect service on BMW AG in Germany via mail.  Ex. A.  Infogation thus triggered the mandatory application of the Hague Convention.  *See*, *e.g.*, *ACQIS Ltd. Liab. Co. v. Lenovo Grp. Ltd.*, 572 F. Supp. 3d 291, 301 (W.D. Tex. 2021) ("This Court reads the Texas service statutes to require the Secretary of State to mail the service to the foreign entity … implicating the Hague Service Convention."); *Freedom Pats. LLC v. TCL Elecs. Holding Ltd.*, No. 4:23-CV-00420, 2023 WL 7414144, at *5 (E.D. Tex. Nov. 9, 2023) ("[T]he Court finds that when a signatory to the Hague Convention is served through the Texas Secretary of State, the Hague Convention is implicated.").

However, Infogation's attempted service on BMW AG through the Texas Secretary of State does not comply with the Hague Convention. Germany has objected to all alternative methods of service under Article 10 of the Hague Convention, including service by mail. *See Hyman v. VOV GmbH*, No. 1:19-CV-00206, 2020 WL 1303971, at *2 (W.D. La. Feb. 28, 2020). Where—as here—a signatory nation has objected to all alternative methods of service, the exclusive method of service available is through the nation's central authority. *See Compass Bank v. Katz*, 287 F.R.D. 392, 396-97 (S.D. Tex. 2012) (holding that "objecting to all alternative of service under Article 10" means the "Central Authority is the exclusive method of service"). Infogation's attempt to serve by mail thus contravenes the Hague Convention. *Id.* at 397 ("Because service under Rule 4(f)(3) cannot be in contravention of any international agreement, the Court must obey the dictates of the Hague Convention.").

Even if Infogation's service attempt were permissible, which it is not, the documents sent by the Texas Secretary of State do not comply with other formal service requirements on a German company. "Formal service under Article 5(1) of the Convention … is only permissible in Germany if the document to be served and any attachments thereto have been prepared in German or have otherwise been translated into German." Ex. D. Infogation failed to do so.

The record here shows that Infogation itself recognized the need to serve BMW AG in Germany. Its attempt to do so through the Texas Secretary of State is improper. *See*, *e.g.*, *Man Ferrostaal Inc. v. M/V Vindonissa*, No. CV H-07-02983, 2009 WL 10714623, at *3 (S.D. Tex. Jan. 23, 2009) ("The service of process … via the Texas Secretary of State is insufficient because it required transmittal of service documents to Germany which, in turn, triggered the requirements of the Hague Convention."). As Infogation has not served BMW AG under the Hague Convention, service of process is insufficient and the Court lacks personal jurisdiction over BMW AG.

14

**B.    Infogation's Service Attempt Through BMW NA Is Also Improper**

Infogation's later attempt to effect service in Texas through non-party BMW NA's service agent CT Corporation fares no better.  The Fifth Circuit has long held "that 'the individual sought to be served must have *actually authorized* another to accept service of process.'"  *Lisson v. ING GROEP N.V.*, 262 F. App'x 567, 569 (5th Cir. 2007) (emphasis added).  Here, neither BMW NA nor CT Corporation is authorized to accept service on behalf of BMW AG.  Göbel Decl. ¶¶ 7-10.  Indeed, CT Corporation rejected Infogation's service attempt because it is "not the registered agent" for BMW AG.  Ex. B.  For this reason alone, service of process is insufficient here.

To the extent Infogation seeks to rely on a corporate relationship between BMW AG and BMW NA, the latter is only an indirect subsidiary and is separated by four intermediary entities.  *Id*. ¶¶ 10-11.  Even then, service on a subsidiary is not imputed to a parent company absent actual authorization.  *Paradigm Ent., Inc. v. Video Sys. Co.*, No. CIV. A. 3:99-CV2004P, 2000 WL 251731, at *3 (N.D. Tex. Mar. 3, 2000) ("Service upon a subsidiary does not usually constitute service on the parent corporation.").  That is particularly the case where, as here, the parent and subsidiary maintain separate and distinct corporate identities.  *See*, *e.g.*, *U.S. ex rel. Wilkins v. N. Am. Const. Corp.*, 173 F. Supp. 2d 601, 642 (S.D. Tex. 2001) ("[S]ervice of process on a wholly-owned subsidiary does not constitute service of process on a parent corporation where separate corporate identities are maintained."); *Blue Spike, LLC v. ASUS Computer Int'l, Inc.*, No. 6:16-CV-1384-RWS-KNM, 2018 WL 3301705, at *6 (E.D. Tex. Feb. 20, 2018) ("[A]s long as the 'parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other.'").  Here, the record demonstrates that BMW AG is an independent legal entity with its own management team, operations, policies, and procedures that are separate and distinct from BMW NA. Göbel Decl. ¶¶ 10-18.

For the same reasons, the narrow "alter ego" exception also does not apply here. The Fifth Circuit has held that under narrow circumstances "even if a domestic subsidiary is not explicitly authorized by its foreign parent corporation as an agent for service, the subsidiary might still be capable of receiving such service." *Lisson*, 262 F. App'x at 570. This exception depends on whether the "foreign corporation exercises such control over the domestic subsidiary that the two entities are essentially one." *Id.*; *see also Blue Spike* WL 3301705, at *6 (holding that the evidence must show that "the separation between the corporations is fiction").[6]

As an initial matter, Infogation bears a heavy burden to show that the two entities are alter egos. *See Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 Fed. App'x 326, 331 (5th Cir. 2011) ("Where a parent and subsidiary observe corporate formalities, the plaintiff has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parent."). Infogation has not even attempted to meet this burden. Nor could it; the clear separation between BMW AG and BMW NA is indisputable.

At the outset, BMW NA is not a direct subsidiary of BMW AG. Göbel Decl. ¶ 10. Indeed, BMW AG is separated from BMW NA by four intermediary entities. *Id.* ¶ 11. BMW AG does not directly own or hold stock or other interest in BMW NA. *Id.* ¶ 10. Nor do BMW AG and BMW NA hold themselves out as a single entity.

The daily operations of BMW AG and BMW NA are separate, with each entity having its own management team. *Id.* at ¶¶ 10-18. BMW AG's business is managed by a separate board, none of whom are officers or directors of BMW NA. *Id.* ¶ 13. BMW AG and BMW NA maintain separate procedures and policies. *Id.* ¶ 15. BMW AG does not maintain BMW NA's books and

---

[6] Texas courts consider several factors for this analysis. *Blue Spike*, 2018 WL 3301705, at *6. The record here shows that BMW AG and BMW NA are not alter egos under those factors.

records, nor does it file BMW NA's tax returns. *Id.* ¶ 17.  Simply put, BMW AG and BMW NA are independent entities with their own management team, operations, policies, and procedures.

The two entities are simply not alter egos, and Infogation's improper attempt to serve BMW NA cannot be imputed to BMW AG.  *See Blue Spike*, 2018 WL 3301705, at *5-6 (holding that service on U.S. subsidiary was insufficient under alter ego analysis even though the foreign parent owns 100% of the U.S. subsidiary's stock); *UNM Rainforest Innovations v. D-Link Corp.*, No. 6-20-CV-00143-ADA, 2020 WL 3965015, at *4 (W.D. Tex. July 13, 2020) (finding indirect service on a foreign company through its domestic subsidiary that is not an alter ego of the foreign corporation would violate "due process protections afforded by the United States Constitution").

Infogation has, therefore, failed to effect service of process under Fed. R. Civ. P. 12(b)(5). It was required to serve BMW AG pursuant to the Hague Convention, which it failed to do.  *See*, *e.g.*, *Michigan Motor Techs., LLC v. Bayerische Motoren Werke AG*, No. 22-CV-3804, 2023 WL 4683428, at *15 (N.D. Ill. July 21, 2023) (ordering plaintiff "to effect service on BMW AG under the Hague Service Convention" and rejecting service on BMW NA).  Dismissal is thus warranted for insufficient service and lack of personal jurisdiction.  *J.O. Alvarez, Inc. v. Rainbow Textiles, Inc.*, 168 F.R.D. 201, 203 (S.D. Tex. 1996) ("[A] district court cannot exercise jurisdiction over a defendant which has not been served properly.").

## VI.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THE ASSERTED PATENTS ARE DIRECTED TO PATENT-INELIGIBLE ABSTRACT IDEAS UNDER 35 U.S.C. § 101

A Rule 12(b)(6) dismissal with prejudice is warranted under 35 U.S.C. § 101.  There can be no factual dispute regarding the express claim language and disclosures of the Asserted Patents. No additional claim construction needs to be performed at this stage.  Nor can Infogation dispute the Asserted Patents' prosecution histories or matters of public knowledge predating the Asserted Patents.  In particular, the record demonstrates that:

17

- the '628 patent is directed to the abstract idea of using artistic maps for navigating areas;

- the '994 and '003 patents are directed to the abstract idea of superimposing images of objects on a map to simulate or resemble the user's 3D environment for navigation—*i.e.*, 3D-mapped navigation; and

- the '743 patent is directed to the abstract idea of optimal navigation route communicated in human language based on real-time data.

"The 'abstract ideas' category embodies the longstanding rule that '[a]n idea of itself is not patentable.'" *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). The abstract idea exception applies where: (1) the claims at issue are directed to patent-ineligible concepts, *and* (2) do not contain additional elements sufficient to transform the abstract idea into a patent-eligible application. *Id*. at 2355.

Under the first step, courts must "determine whether the claims at issue are directed to a patent-ineligible concept." *Id*. "[T]he claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). "[T]he specification cannot be used to import details from the specification if those details are not claimed." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019). "The § 101 inquiry must [thus] focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016).

Under the second step of the eligibility inquiry, courts must further "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*,

134 S. Ct. at 2355.  The Supreme Court has described this "as a search for an 'inventive concept'—
*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice
amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Id.*

Applying this two-step analysis, the claims—individually and as an ordered combination—
merely recite abstract ideas appended to conventional structures and processes.  The claims fall
squarely within the Federal Circuit's description of an abstract idea: "a building block, a basic
conceptual framework …."  *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1333–34
(Fed. Cir. 2015).  Throughout the history of navigation, individuals have used artistic maps for
navigation based on landmarks, and have communicated optimal routes to operators in human
language that is easily understandable.  Using 3D-mapped navigation was also well known and
conventional long before the Asserted Patents.  District courts have also held similar claims to be
directed to patent-ineligible subject matter.  This Court should reach the same conclusion and
dismiss Infogation's Complaint with prejudice.

### A.    The '628 Patent Is Directed to the Patent-Ineligible Abstract Idea of Using Artistic Maps for Navigation

Starting with the first step of the eligibility inquiry, the plain claim language of independent
claims 1 and 11 recites a method and a device for navigating an area on an artistic map.  Ex. E at
8:24-57, 9:30-10:7; *see also id.* at Abstract ("Techniques for navigating an artistic map are
disclosed.").  The '628 patent defines an "artistic map" as showing objects or points of interest in
an exaggerated manner—*i.e.*, a non-linearly scaled map.  *Id.*  The claims track the same concept
by reciting that the artistic map is non-linearly scaled in that it includes various objects
(representing points of interest) being exaggeratedly shown.  *Id.* at 8:27-29, 9:33-36. The purported
objective of the claimed subject matter is to avoid a "boring" map and "to make the navigation []
a pleasant experience."  *Id.* at 1:41-42, 65-67.

As an initial matter, using an artistic map for navigation has been a basic conceptual framework in cartography and navigation for ages.  Throughout history, maps have been drawn at different scales and points of interest or landmarks appeared exaggerated.  Ex. F at 22 ("Landmarks usually enjoy a prominent spatial location. … They may vary widely in scale.").  The '628 patent itself shows a prior art example of such an artistic map used for zoos in Figure 1.  Ex. E. at 4:3-6 ("The map 100 is artistic and non-linearly scaled, where points of interests are exaggeratedly displayed to assist a visitor to locate what is desired to be seen.")

The claims merely append this age-old concept to conventional structures and procedures.  An artistic map is downloaded from a network into a portable computing device configured as a GPS receiver.  *Id.* at 8:26-27.  GPS receivers were "widely used" at the time.  *Id.* at 1:29-39.  The '628 patent also discloses that artistic maps in the prior art were downloaded to portable devices.  *Id.* at 4:6-7 ("Such a map may be provided *electronically* by the zoo.").  Moreover, this is accomplished by way of conventional GPS data files.  *Id.* at 4:7-12.  The artistic map includes various objects that are exaggeratedly shown and represented by a plurality of points on the display.  *Id.* at 8:27-29, 8:36-37.  This is an inherent feature of showing objects on the map.  *Id.* at 5:25-27 ("Each of the objects … is inherently represented" by points on the display.").

The remainder of the independent claims merely recite steps directed to data input, processing, conversion, and output for providing navigational directions.  *Id.* at 8:39-57.  During prosecution of the '628 patent, these steps were characterized as "data manipulation operations."  Ex. G at 8-10.  In particular, the claims require first receiving a user's selection of an object and converting the corresponding data to coordinates in an underlying geographical map not displayed.  Ex. E at 8:39-42.  This means "the pair of coordinates in the map is translated into a pair of latitude and longitude in an actual geographic map."  *Id.* at 6:19-20.  Standard mathematical interpolation

of coordinates is used for this process.  *Id.* at 4:57-63, 7:7-14.[7]  The '628 patent provides that such translation is performed by "an application module"—*i.e.*, software code executed by a processor or microcontroller.  *Id.* at 5:15-21.  The data processing devices here are conventional GPS receivers and processors.  *Id.* at 1:29-39; 4:10-12; 5:6-8; 5:27-30.

Viewed as a whole, the claims are directed to the abstract idea of using an artistic map for navigating an area.  The claims are thus directed to "a building block, a basic conceptual framework."  *Versata*, 793 F.3d at 1333–34.  Without more, the claims are merely directed to an abstract idea that cannot be salvaged with physical components. *See*, *e.g.*, *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea.").  The claims recite no specialized structures, processors, or other components to carry out the abstract idea.  The Supreme Court has expressly held that using a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention. *See Alice*, 134 S. Ct. at 2347.

Courts have held similar concepts to be patent-ineligible.  *See*, *e.g.*, *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022) (patent-ineligibility of claims directed to "presenting a map, having a user select a portion of that map, and then synchronizing the map and its corresponding list to display a more limited data set to the user"); *Jewel Pathway LLC v. Polar Electro Inc.*, 556 F. Supp. 3d 335, 340-42 (S.D.N.Y. 2021) (same for claims directed to a method of generating a traversable path based on GPS data but without using traditional maps); *Groundswell Techs., Inc. v. Synapsense Corp.*, No. CV1506024ABJPRX, 2016 WL 6661177, at *5-6 (C.D. Cal. Apr. 28, 2016) (same for claims directed to "using a processor to manipulate the

---

[7] The artistic map is the interface for the user and the underlying geographic map is used for route calculations.  Combining the use of an artistic map with real-world geographic data has been conventional human activity for ages.  This is referred to as cognitive mapping. Ex. F at 15.

data into a cardinal matrix format, create GIS compatible data from that reformatted data, generate a cartographic layout, and overlay and report that layout as a map layer"); *see also Move, Inc. v. Real Estate All. Ltd.*, 221 F. Supp. 3d 1149, 1162 (C.D. Cal. 2016) ("The concept of using a map to display geographic information is ancient … The fact that the map is digital, rather than physical, does not change the analysis.").  This Court should reach the same conclusion on the '628 patent.

The second step of the eligibility inquiry cannot save the claims.  Nothing in the claims, either individually or as an ordered combination, adds significantly more than the abstract idea.  The '628 patent discloses that all claimed components, functions, and processes were well-known and conventional at the time.  Conventional structures and functions that "merely perform[] generic, ordinary functions … do not form the basis for an inventive concept[.]"  *In re TLI Commc'ns LLC Patent Litig.*, 87 F. Supp. 3d 773, 792 (E.D. Va. 2015).  Put differently, the "disclosure of structure and concrete components is insufficient when those disclosures are generic and do not operate as meaningful limitations on the boundaries of the patent."  *Id.*; *see also Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1349-51 (Fed. Cir. 2014).

## B.  The '994 and '003 Patents Are Directed to the Patent-Ineligible Abstract Idea of 3D-Mapped Navigation

The plain claim language recites displaying a map on a GPS receiver by superimposing images of objects (*e.g.*, landmarks, signs, buildings) to create a 3D impression of the user's environment along a route.  Ex. I at 7:28-37, 8:14-22; Ex. J at 7:28-37, 8:12-20; *see also* Ex. I at Abstract ("A navigation device presents a digital map resembling an ambient environment with a certain level of realism, where various objects resembling major structures or signs are presented or superimposed in the map."); *id.* at 2:10-15 ("The structures or settings may include landmarks, signs, significant buildings, exit designs or other impressions resembling the vicinity.").  The purported objective is to avoid a 2D map that "is considered boring."  *Id.* at 1:38-41.

22

The claimed subject matter was aptly summarized during prosecution of the '994 patent as "a mechanism to present a GPS map resembling (not real but similar) the surrounding of a location being approached." Ex. K at 7-9. Notably, the '994 patent issued more than a year before the Supreme Court's seminal decision in *Alice*. Applying the governing two-step analysis from the *Alice* decision, the claims—individually and as an ordered combination—merely recite an abstract idea appended to conventional structures and processes.

The claimed concept of 3D-mapped navigation has been known for decades. *See* Exs. H and L-N. They were, in fact, so well-known that the '994 and '003 patents do not disclose technological details for constructing a 3D map. *See* Ex. I at 3:16-21 ("[W]ell known methods, procedures, components, and circuitry have not been described in detail …"). The specification merely provides that the processes are all implemented in conventional software. *Id.* at 4:54-56, 5:56-58. By executing software code on a processor, "the GPS searches and locates the map object attribute table in the memory unit 282 for map objects in the vicinity of the GPS location" and "generates an electronic map including every map object to be displayed with their respective set attributes." *Id.* at 4:63-5:15.

In other words, the claims are directed to searching data in a table, processing it, and applying it in software to display results. *Id.* at 3:47-50, 3:59-62. Changing any object attributes, such as changing colors or adding effects, is also performed by conventional software applications. *Id.* at 4:22-25; *see also id.* at 5:18-22 (adding rain effect based on sensor data); 6:4-37 (disclosing "simple color-changing effects"). Any claimed structural limitations are also conventional. Figure 2A of the '994 patent shows well-known components of a GPS receiver used to implement the claimed invention. *Id.* at 3:35-38. It has all structural claim limitations, including a display, memory, and micro-controller for executing computer code. *Id.* at 3:35-50.

It is precisely these types of claims that have been repeatedly rejected as patent-ineligible. *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (patent-ineligibility of claims "directed to ... collecting, displaying, and manipulating data"); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (patent-ineligibility of claims directed to "collecting information, analyzing it, and displaying certain results of the collection and analysis"). Courts have also arrived at patent-ineligibility decisions for similar claims directed to superimposing objects on images or otherwise integrating real-world objects with virtual data. *See*, *e.g.*, *Zillow*, 50 F.4th at 1377-78 (patent-ineligibility of claims directed to determining location information, generating a relevant map area, retrieving objects for the map area, and applying the objects on the map); *NantWorks, LLC v. Niantic, Inc.*, No. 20-CV-06262-LB, 2023 WL 187490, at *3-8 (N.D. Cal. Jan. 13, 2023), *motion to certify appeal denied*, 2023 WL 2633211 (N.D. Cal. Mar. 24, 2023) (same for claims directed to superimposing AR objects onto digital representations of a mobile device's actual surroundings); *Peschke Map Techs. LLC v. Rouse Props. Inc.*, 168 F. Supp. 3d 881, 887-90 (E.D. Va. 2016) (same for claims directed to computer-based map navigation with visual presentation of a shopping center showing the layout of the buildings and stores); *Barbaro Techs., LLC v. Niantic, Inc.*, 475 F. Supp. 3d 1007, 1011-12 (N.D. Cal. 2020) (same for claims directed to integrating real-world location information into a virtual 3D environment).

This Court should reach the same conclusion here. The claims are merely directed to "a basic conceptual framework." *Versata*, 793 F.3d at 1333–34. The claims recite no specialized structures, processors, or other components to carry out the abstract idea. Without more, the claims are merely directed to an abstract idea that cannot be salvaged with physical components. *See*, *e.g.*, *In re TLI Commc'ns*, 823 F.3d at 613 ("It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea.").

The claims fare no better under the second step of the eligibility inquiry. Nothing in the claims, either individually or as an ordered combination, adds significantly more than the abstract idea itself. As discussed above, all claimed components, functions, and processes were well-known and conventional at the time. Such conventional structures and functions that "merely perform[] generic, ordinary functions … do not form the basis for an inventive concept[.]" *In re TLI Commc'ns.*, 87 F. Supp. 3d at 792. Similarly, "appending conventional steps, specified at a high level of generality, to a method already well known in the art is *not enough* to supply the 'inventive concept' needed to make this transformation." *Alice*, 134 S. Ct. at 2350 (internal quotation marks and citations omitted).

**C.    The '743 Patents Is Directed to the Patent-Ineligible Abstract Idea of Optimal Route Navigation**

The long-expired '743 patent issued **more than a decade before** the *Alice* decision. Applying the governing two-step analysis, these claims also merely recite an abstract idea appended to conventional structures and processes. The plain claim language recites providing an optimal route using real-time information for a navigation system. Ex. O at 15:56-16:2, 17:12-16, 18:6-19, 18:25-37. A navigation server calculates the optimal route and formats it in "non-proprietary, natural language." *Id.* The '743 patent defines this formatting as "[a] *generic natural language description* [that] is used to specify the optimal route [and] downloaded to the client." *Id.* at Abstract (emphasis added). The natural language description provides route instructions in simple "terms [that are] self-explanatory." *Id.* at 9:19-27. In other words, the route data is transmitted to the navigation system in human language. *See*, *e.g.*, *id*. at Fig. 5; *see also InfoGation Corp. v. ZTE Corp.*, No. 16-CV-01901-H-JLB, 2017 WL 1821402, at *9 (S.D. Cal. May 5, 2017) (construing "natural language" in the '743 patent as "a language spoken or written by humans, as opposed to programming language or machine language").

Providing optimal route instructions in natural language is a human activity as old as navigation itself. For instance, navigators on ships create optimal routes referred to as passage or mission plans. These are step-by-step descriptions of the voyage and communicated to the navigation team. The official language of navigators is referred to as "seaspeak," which is a controlled *natural language* spoken by *all* navigation teams around the world. Exs. P and Q. In another example, the motorsport "rallying" involves a driver and co-driver. The co-driver is called a "navigator" and provides navigation guidance based on the route and conditions.

The claims merely append this abstract idea to conventional structures and processes. Specifically, the '743 patent acknowledges that the use of real-time data for navigation was already well-known at the time. Ex. O at 1:46-61 (identifying prior art systems). All recited structural limitations are thus conventional and generic parts. *Id.* 5:39-41, 5:66-6:2, 6:40-42. Even the real-time data used to calculate an optimal route is based on well-known algorithms. *Id.* at Abstract; *see also id.* at 2:22-24 (noting prior art algorithms for calculating optimal routes).

In other words, the claims recite a general-purpose navigation system that receives the route data, uses an algorithm to processes it, searches a local mapping database, and displays the route data for the user. *Id.* at 8:54-59, 9:40-42, 11:6-8. As discussed above, courts have held that such claims are patent-ineligible. *Intell. Ventures*, 850 F.3d at 1340 (Fed. Cir. 2017) (patent-ineligibility of claims "directed to ... collecting, displaying, and manipulating data"); *Elec. Power*, 830 F.3d at 1353 (patent-ineligibility of claims directed to "collecting information, analyzing it, and displaying certain results of the collection and analysis"). Viewed as a whole, the claims are merely directed to the abstract idea of optimal route navigation based on collected and processed data. The claims thus recite only "a building block, a basic conceptual framework." *Versata*, 793 F.3d at 1333–34.

Another district court has denied a motion to dismiss with respect to the '743 patent, relying on the "non-proprietary, natural language" formatting to conclude that the claims are not directed to an abstract idea. *InfoGation Corp. v. ZTE Corp.*, No. 16-CV-01901-H-JLB, 2017 WL 1135638, at *6 (S.D. Cal. Mar. 27, 2017). As an initial matter, this Court is not bound by another court's decision. *See*, *e.g.*, *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."). Indeed, district courts have declined to follow another court's decision holding claims to be patent-eligible. *See*, *e.g.*, *Realtime Adaptive Streaming LLC v. Netflix, Inc.*, No. CV 17-1692-CFC-SRF, 2018 WL 6521978, at *6 (D. Del. Dec. 12, 2018) (declining to follow prior decisions on patent-eligibility from three district courts—holding instead that the same claims were patent-ineligible).

This Court should evaluate the issue on its own. *Id.* The other district court was not presented with the same arguments and evidence. Here, the record shows that providing optimal route instructions in natural language is an age-old human activity performed by navigators in different settings. Such navigators use natural language to communicate an optimal route. In the context of ship navigation, every navigator in the world understands the natural language instructions referred to as "seaspeak." The '743 patent merely appends this human activity to generic technology. That cannot salvage the abstract nature of the claims. *See Alice*, 134 S. Ct. at 2358 ("Stating an abstract idea while adding the words 'apply it with a computer' simply combines those two steps, with the same deficient result."). "[B]oth Supreme Court precedent and our court's precedent make clear that automation of a long-standing human process cannot be the inventive concept because such automation is itself an abstract idea." *Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*, No. 2021-1906, 2022 WL 794981, at *3 (Fed. Cir. Mar. 15, 2022).

The claims also fail under the second step of the eligibility inquiry.  Nothing in the claims, either individually or as an ordered combination, adds significantly more than the abstract idea itself.  As discussed above, all claimed components, functions, and processes were well-known and conventional at the time.  Such conventional structures and functions that "merely perform[] generic, ordinary functions … do not form the basis for an inventive concept[.]"  *In re TLI Commc'ns.*, 87 F. Supp. 3d at 792.  Similarly, "appending conventional steps, specified at a high level of generality, to a method already well known in the art is *not enough* to supply the 'inventive concept' needed to make this transformation."  *Alice*, 134 S. Ct. at 2350 (internal quotation marks and citations omitted).

For at least the foregoing reasons, the Asserted Patents are directed to patent-ineligible abstract ideas.  Infogation cannot cure patent-ineligibility through amendment of the Complaint. Accordingly, dismissal with prejudice under Rule 12(b)(6) is warranted and should be entered.

## VII.  THE COURT SHOULD ALSO DISMISS THE COMPLAINT BECAUSE IT FAILS TO PLEAD A PLAUSIBLE CLAIM OF INFRINGEMENT

### A.  Infogation Fails to Plead Plausible Direct Infringement of the '628 Patent

Infogation's infringement allegations are not plausible.  First, asserted claim 1 of the '628 patent requires a *portable* device with navigation capabilities.  *Id.* at 8:32-33.  As shown in the Complaint itself, however, the accused navigation system is a fixed feature within a vehicle—*not* a portable device.  Second, asserted claim 1 requires that only the artistic map is displayed. Ex. E at 8:37-38, 56-57.  The Complaint, however, shows that the alleged artistic map is displayed alongside the purported geographic map.  *See* Compl. ¶ 29 ("screenshot showing relationship between artistic map and geographic map").  "Where, as here, the factual allegations are actually inconsistent with and contradict infringement, they are likewise insufficient to state a plausible claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021).  Third, Infogation

does not plead any facts to show a single instance of BMW AG allegedly performing the method of claim 1 in the United States.  *See LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1325 (Fed. Cir. 2016).  Dismissal is, therefore, warranted for failure to plead a plausible claim.

### B.    Infogation Fails to Plead Plausible Direct Infringement of the '994 Patent

Infogation's allegations under Count 2 are also insufficient.  First, asserted claim 1 of the '994 patent requires changing the superimposed objects of the structures (*e.g.*, landmarks, signs, significant buildings, and exit designs) in accordance with the weather conditions around the GPS receiver.  Ex. I at 7:34-46.  The Complaint merely shows a map with a weather forecast for different regions.  Compl. ¶ 61.  The weather icons are clearly not objects resembling structures along the route and superimposed to create a 3D impression.  Second, claim 1 requires that "the map is shown to include a raining effect when raining happens."  Ex. I at 7:51-52.  The image in the Complaint does not show any raining effect.  Infogation has failed to plead sufficient facts for a plausible direct infringement theory.  *Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-cv-325-JRG, 2016 WL 9275395, at *3 (E.D. Tex. Oct. 19, 2016).  Dismissal is, therefore, warranted for failure to plead a plausible claim.

### C.    Infogation Fails to Plead Plausible Direct Infringement of the '003 Patent

Asserted claim 1 of the '003 patent requires that "an icon of a vehicle in the map shows that headlights are on when the vehicle is supposed to turn on its headlights."  Ex. J at 7:50-52. The specification explains that "*instead of showing an arrow* representing a vehicle going along a road, a car icon is used."  *Id.* at 7:10-11 (emphasis added).  The Complaint, however, shows the opposite—an arrow representing the vehicle is used instead of a car icon.  Compl. ¶ 45.  Dismissal is warranted where, as here, the Complaint's own allegations contradict infringement.  *Bot M8*, 4 F.4th at 1354.

### D.    Infogation Fails to Plead Plausible Direct Infringement of the '743 Patent

Asserted claim 15 of the '743 patent is drawn to a system that requires a "*navigation server for calculating optimal routes based on real-time information.*"  Ex. O at 17:13-16 (emphasis added).  Infogation does not plead that BMW AG provides a navigation server.  There cannot be direct infringement because Infogation has not pleaded that a single party provides all components of the accused system.  *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) ("Our cases have applied joint infringement to method claims and not system claims.").

### E.    Infogation Fails to Plead Plausible Indirect Infringement

Infogation's allegations of indirect infringement also fail.  *See Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017).  The Complaint fails to allege any factual support.  *See, e.g.*, *Inhale, Inc v. Gravitron, LLC*, No. 1-18-cv-762-LY, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018) (dismissal because the "induced infringement claim entirely lacks factual allegations … that Gravitron intended another party to infringe and knew of that party's infringement").  Dismissal is warranted under Rule 12(b)(6).

## VIII.   CONCLUSION

For the foregoing reasons, BMW AG respectfully requests that the Court grant this Motion in its entirety and award any additional relief that the Court deems just and proper.

Respectfully submitted,

Dated:  January 16, 2024          */s/ Brian Paul Gearing*

————————————————————

Brian Paul Gearing (*pro hac vice*)
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022-2524
Tel: (212) 223-4000
Fax: (212) 223-4134
bgearing@crowell.com

Ali H.K. Tehrani (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
Tel: (202) 654-2500
Fax: (202) 628-5116
atehrani@crowell.com

Michael E. Jones
SBN:  10929400
POTTER MINTON, PC
110 North College, Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

*Attorneys for Defendant*
*Bayerische Motoren Werke AG*

**CERTIFICATE OF COMPLIANCE WITH THE COURT'S**
**35 U.S.C. § 101 MOTION PRACTICE ORDER**

_____ The parties agree that prior claim construction is not needed to inform the Court's analysis as to patentability.

___X___ The parties disagree on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

Dated:  January 16, 2024                              */s/ Brian Paul Gearing*
                                                       _____

                                                       Brian Paul Gearing

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I served the foregoing document upon the attorneys of record for all parties by electronically filing the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to registered attorneys of record.

Dated:  January 16, 2024                              */s/ Brian Paul Gearing*
                                                       _____

                                                       Brian Paul Gearing